IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06-cv-01278-EWN-BNB

DAVID B. FRIEDEL,

      Plaintiff,

v.

MOUNTAIN VIEW FIRE PROTECTION DISTRICT; and
JOHN DEVLIN, MVFPD Fire Chief in his Individual and official capacity,

      Defendants.

---

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

      This matter comes before the Court on Defendants' Motion for Summary Judgment [Doc. # 46], filed on January 22, 2007. Plaintiff filed his response on March 5, 2007 [Doc. # 49], and defendants replied on April 5, 2007 [Doc. # 56]. The motion is fully briefed and ripe for disposition.

## I.      BACKGROUND

      This case arises out of Plaintiff David Friedel's demotion and eventual termination from his employment with Defendant Mountain View Fire Protection District ("Mountain View"), which is a special district organized to provide fire protection and to supply emergency medical and rescue services. C.R.S. § 32-1-103(7). Defendant John Devlin was Fire Chief of Mountain View during the relevant time period. (*See* Mullison Aff. ¶ 5, Ex. JJ to Def.s' Reply.) As Fire Chief, Devlin was responsible for, among other things, managing and supervising all district

operations, maintaining effective communication with all district personnel, and supervising all district personnel, including appointment, hiring and termination of all employees. (Ex. H to Def.s' Mot.) Plaintiff was employed by Mountain View as an Assistant Fire Chief from 1981 until June 2005. (Final Pretrial Order [Dkt. # 59] at 13.)

On June 21, 2004 Mountain View issued an employee handbook that contained procedures governing disciplinary actions against district employees. (Ex. D to Def.s' Mot.) The handbook also contained several disclaimers stating that Mountain View's employees were "at-will" employees who could be terminated with or without cause and without prior notice. (*See id.*) On August 1, 2004 plaintiff signed a form acknowledging he had received the handbook. (Ex. E to Def.s ' Mot.)

In June 2005, Devlin implemented a "reorganization" plan. (*See* Devlin Dep., Ex. 9 to Pl.'s Resp., at 108.) Before implementing the plan, Devlin commissioned two independent studies of organizational effectiveness. (Exs. F & G to Def.s' Mot.) Devlin informed Mountain View's employees via email about the reorganization on June 21, 2005, but did not state the reasons for the reorganization in the email. (Devlin Dep. at 186–87.) As part of the reorganization, two of three Assistant Chief positions were eliminated, including plaintiff's, and two new Battalion Chief positions were created, which reported to the remaining Assistant Chief. (*See id.* at 106–08; Org. Charts, Ex. I to Def.s' Mot.) Plaintiff's former duties were reallocated amongst the Battalion Chiefs and the newly created EMS Coordinator. (*See id.*; Def.s' Mot. at 6.) Plaintiff was offered the new position of Training Captain, which he accepted in writing on June 26, 2005. (Ex. K to

Def.s' Mot.)  The position paid $20,000 less and called for plaintiff to work fewer hours per week than his previous position.  (Devlin Dep., Ex. FF to Def.s' Reply, at 156; Ex. W to Def.s' Mot.)

Plaintiff was 44 years old at the time of the reorganization.  (Pl.'s Dep., Ex. C to Def.s' Mot., at 80.)  Mark Lawley, who maintained his position as Assistant Chief after the reorganization, is 14 months younger than plaintiff.  (Lawley Aff. ¶ 2, Ex. L to Def.s' Mot.) Roger Rademacher, who served temporarily as a Battalion Chief after the reorganization, is three years and eight months younger than plaintiff.  (Rademacher Aff. ¶ 2, Ex. O to Def.s' Mot.) David Beebe, who permanently took over the Battalion Chief position temporarily held by Rademacher, is approximately nine months younger than plaintiff.  (Beebe Aff. ¶ 2, Ex. N to Def.s' Mot.)  Hubert Albrandt, who moved from Assistant Chief to Battalion Chief, is seven years older than plaintiff.  (Albrandt Aff. ¶ 2, Ex. M to Def.s' Mot.)  Alice "Twink" Dalton, who became the new EMS Coordinator, is almost 11 years older than plaintiff.  (Dalton Aff. ¶ 2, Ex. P to Def.s' Mot.)

On July 8, 2005, plaintiff filed a Charge of Discrimination with the EEOC.  (Ex. R to Def.s' Mot.; Pl.'s Dep. at 194–95.)  Mountain View acknowledged receiving notice of this charge in a letter dated July 26, 2005.  (Ex. R to Def.s' Mot.)  On July 25, 2005, plaintiff filed an internal grievance with Mountain View complaining in part that his demotion was based on age discrimination.  (Ex. S to Def.s' Mot.)  In the meantime, when plaintiff's demotion took effect, his accrued leave and vacation time were significantly reduced, which was first reflected on plaintiff's July 25, 2005 paycheck.  (Ex. 16 to Pl.'s Resp.; Mullison Aff. ¶ 4(c) & Att.)  At that time, there was no written policy of modifying accrued vacation and sick time upon transition to a position

with different hourly requirements. (*See generally* Ex. D to Def.s' Mot.; Devlin Dep. at 225.)

However, the policy had twice been utilized previously by Mountain View while Devlin was Fire

Chief—once in 2002 when leave time was added for an employee who moved from a 40-hour

week position to a 56-hour week position, and once in 2004 when an employee's leave time was

reduced similarly to plaintiff's after moving from a 56-hour week position to a 40-hour week

position. (Mullison Aff. ¶ 4 & Att.; Devlin Aff. ¶ 4, Ex. II to Def.s' Reply; Pischke Dep., Ex. EE

to Def.s' Reply, at 143–44.)

After accepting the Training Captain position in June 2005, plaintiff took FMLA leave and

exhausted his FMLA, vacation, and sick leave time on November 2, 2005, having never reported

to work as Training Captain. (Pl.'s Dep. at 129.) On November 3, 2005, Devlin notified plaintiff

he was being terminated for failure to report to work. (Ex. CC to Def.s' Mot.)

On February 28, 2006, the EEOC issued plaintiff a Dismissal and Notice of Rights. (Ex.

BB to Def.s' Mot.) Plaintiff filed the underlying suit on May 30, 2006, asserting the following

causes of action: (1) age discrimination in violation of the Age Discrimination in Employment Act

("ADEA") and the Colorado Anti-Discrimination Act; (2) retaliation against plaintiff for engaging

in protected opposition to discrimination by reducing plaintiff's accrued leave time, in violation of

the ADEA; (3) breach of contract; (4) tortious interference with contract; and (5) due process

violation under 42 U.S.C. § 1983. Defendants now move for summary judgment on all claims.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate under Fed.R.Civ.P. 56(c) only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). When applying this standard, the Court reviews the pleadings and the documentary evidence in the light most favorable to the non-moving party. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[W]here the non-moving party will bear the burden of proof at trial on a dispositive issue that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 322).

## III.   ANALYSIS

### A.    Age Discrimination Claim

The ADEA renders it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment because of the individual's age. 29 U.S.C. § 623(a)(1). When a plaintiff relies on circumstantial evidence to prove discriminatory intent, as in the instant case, the summary

5

judgment analysis is performed under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005).

"In the summary judgment context, a plaintiff initially must raise a genuine issue of material fact of each element of the prima facie case." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). After establishment of a prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). If the employer meets this burden, it then reverts back to the plaintiff to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* Demonstrating evidence of pretext gets the plaintiff "over the hurdle of summary judgment." *Id.* at 452 (citation and quotation marks omitted).

In applying the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402, Colorado courts essentially rely on this same burden-shifting framework. *See Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997). The parties appear to agree that plaintiff's discrimination claim should be resolved similarly under state and federal law. *See id.* at 399 (because the language of the Colorado anti-discrimination statute "closely parallels its federal counterpart," federal law is "particularly helpful" in "developing a thorough approach" to discrimination claims brought under state law).

## 1. *Prima Facie Case*

To establish a prima facie discrimination case under the ADEA, a plaintiff must prove that: (1) he is within the protected age group (at least 40 years of age); (2) he was doing satisfactory work; (3) he was discharged from employment; and (4) his position was filled by a younger person.[1] *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (citing *McKnight*, 149 F.3d at 1128). Defendants do not dispute that plaintiff has satisfied the first three requirements and assert only that plaintiff has failed to raise an issue of fact on the fourth requirement. Defendants claim that no persons outside the protected class were affected by the reorganization and that those persons arguably treated more favorably than plaintiff were not significantly younger than plaintiff, precluding him from establishing a prima facie case. (Def.s' Mot. at 13–14.)

Defendants' first argument is easily dismissed, as an employee may assert age discrimination even if the younger replacement employee is also a member of the protected class. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). However, the Supreme Court has also recognized that an inference of discrimination cannot be drawn from the replacement of one employee with an "insignificantly younger" employee. *Id.* at 313. Thus, to establish a prima facie case of age discrimination, the age difference between the plaintiff and the replacement employee must be significant enough to allow such an inference to be drawn. *Id.* at

---

[1] Under the analogous Colorado Anti-Discrimination Act, a prima facie case of discrimination requires proof that: (i) the complainant belongs to a protected class; (ii) the complainant was qualified for the job at issue; (iii) the complainant suffered an adverse employment decision despite his or her qualifications; and (iv) the circumstances gave rise to an inference of unlawful discrimination. *Big O Tires*, Inc., 940 P.2d at 400.

312–13.  While the Tenth Circuit has held that a two-year age difference is "obviously insignificant," *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1166 (10th Cir. 2000), it has declined to go any further in adopting bright lines rules on the issue.  *Whittington v. Nordam Group Inc.*, 429 F.3d 986, 996 (10th Cir. 2005) (refusing to adopt a "definitive five-year rule" and declining to follow other circuits that have "establish[ed] a direct-evidence requirement when the age difference is less than five years").  Thus, an age difference greater than two years is not "obviously insignificant" in the Tenth Circuit and satisfies the fourth prima facie requirement without further inquiry for summary judgment purposes.  *See Oglesby v. Hy-vee, Inc.*, 214 Fed. Appx. 829, 833 (10th Cir. 2007) (holding, without discussion, that a five-year age difference satisfies the fourth requirement of the prima facie case).

In the instant case, the inquiry into the age difference is complicated by the reorganization itself, which, as discussed above, involved the reallocation of the responsibilities once held by plaintiff among several different people.  Only Roger Rademacher, who served temporarily as a Battalion Chief after the reorganization, is more than two years younger than plaintiff. (Rademacher Aff. ¶ 2) (indicating he is three years and eight months younger than plaintiff). Nevertheless, the Tenth Circuit's explicit rejection of a bright line rule allows plaintiff to satisfy the fourth requirement based on the age difference between him and Rademacher.  There is evidence that plaintiff was at least temporarily replaced by someone more than two years younger than him, which is sufficient to establish a prima facie case of age discrimination.

## 2. *Legitimate Business Purpose*

Because plaintiff has established a prima facie case of discrimination, Mountain View has the burden to articulate a legitimate, nondiscriminatory purpose for the adverse employment action. *Randle*, 69 F.3d at 451. The Supreme Court has held that "[t]his burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Furthermore, "the defendant does not at this stage need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994), *abrogated on other grounds by Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003).

Mountain View asserts plaintiff's demotion was part of a reorganization of the fire department. As noted above, Devlin commissioned two organizational effectiveness studies in 2003 and 2004. (Exs. F & G to Def.s' Mot.) According to defendants, Devlin implemented the reorganization to address some of the problems indicated in the reports such as supervision of and consistency between the shifts, accountability, communication throughout the district, and the quality and quantity of training. (Devlin Dep. at 236.) Devlin testified his decision to move plaintiff to the Training Captain position rather than a supervisory Battalion Chief position was part of the attempt to address the district's training needs and also reflected concerns Devlin and Deputy Chief Steve Pischke had about plaintiff's abilities as a manager with respect to the day-to-day activities of the personnel on his shift. (*Id.* at 236–37; Pischke Dep. at 58–60.) As stipulated

by plaintiff, these proffered reasons for plaintiff's demotion satisfy Mountain View's burden of production.

### 3. *Pretext*

Because Mountain View has proffered a legitimate, nondiscriminatory reason for the demotion, the burden shifts back to plaintiff to show that the reason is merely a pretext for discriminatory action. *Randle*, 69 F.3d at 451. A plaintiff may do this at the summary judgment stage by demonstrating a genuine issue of material fact "as to whether the proffered reasons were unworthy of belief" and "need not demonstrate that discriminatory reasons motivated the employer's decision." *Morgan*, 108 F.3d at 1321–22 (citing *Randle*, 69 F.3d at 451–52). Specifically, "[a] plaintiff demonstrates pretext by producing evidence of 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Jaramillo*, 427 F.3d at 1308 (quoting *Morgan*, 108 F.3d at 1323). However, "[m]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Plaintiff asserts there is evidence that the proffered reasons for the reorganization and plaintiff's demotion are "unworthy of credence" and that an inference can therefore be drawn that plaintiff was not in fact demoted for those reasons. However, after reviewing plaintiff's arguments and the evidence he relies on in support, the Court holds that, to the extent such

evidence is before the Court and properly considered on summary judgment,[2] it does not raise a

genuine issue of material fact as to whether the explanations for plaintiff's demotion were

pretextual.

First, plaintiff references a statement Devlin made at the conclusion of a meeting with

management that occurred after the organizational studies were completed. Devlin was asked

whether he thought another fire chief might lose his job and relayed some comments he had heard

years earlier from a city manager regarding an organizational study done in that district, including

the statement, "If you're going to kill the king, kill him dead, don't just wound him." (Devlin

Dep. at 197–200.) Plaintiff contends this statement was made in the context of Devlin's

indicating "that he was about to clean house, demoting and replacing the older, highly-competent,

challengers with younger, less-experienced, and more easily controlled individuals." (Pl.'s Resp.

at 14.) However, plaintiff offers no evidence to support his version of the context in which the

"kill the king" statement was made or to rebut Devlin's explanation of it. Without such evidence,

there is no indication that the statement was at all related to the Mountain View reorganization,

and the statement does not support plaintiff's pretext argument.

---

[2] Plaintiff cites to some pages of deposition testimony that he failed to attach to his response brief and that are not otherwise in the record. In ruling on a summary judgment motion, the Court cannot consider evidence that it is unable to review. Moreover, plaintiff often relies on unsworn, hearsay written statements by various individuals in support of his pretext arguments. Such statements are not properly considered in resolving a motion for summary judgment. F.R.Civ.P. 56(c) (summary judgment proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"); *see also Argo v. Blue Cross & Blue Shield of Kan. Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (noting that the substance of evidence presented on summary judgment must be admissible) (citations omitted). Thus, the Court has not considered them in resolving the motion.

Second, Devlin testified that on June 7, 2005, approximately two weeks before plaintiff was notified of his demotion, Devlin told plaintiff "you're toast" while joking with him over an EMS issue involving another fire department. (Devlin Dep. at 207.) Plaintiff argues Devlin made this statement just after learning what had happened during a meeting plaintiff had with his shift, in which plaintiff "told his people what the results of the Survey had been and that Devlin had openly and explicitly announced his intention to clean house and solve his management problems." (Pl.'s Resp. at 15.) Again, plaintiff cites no evidence to support his interpretation of the statement or the context in which it was made and thus cannot use it to raise a fact issue regarding pretext.

Plaintiff next notes that Devlin's official announcement of the reorganization to Mountain View personnel did not include an explanation of the reasons for or purposes of the change. (Devlin Dep. at 189.) Plaintiff also argues that others at Mountain View, who were not involved in the reorganization, were unaware of the reasons for it. (Rusk Dep., Ex. 14 to Pl.'s Resp., at 57–59.) It is unclear, however, how an inference can be drawn that the reasons now proffered for the reorganization are false merely from the fact that the public announcement of the reorganization did not state those or any other reasons. Significantly, plaintiff points to no evidence that Devlin ever communicated to anyone a reason for the reorganization that differed from those now offered. Plaintiff notes that, when he asked Devlin why he was being demoted, Devlin responded it was because plaintiff "could not manage his guys." (Verified Sec. Am. Compl. ¶ 22.) This statement, however, actually supports Devlin's contention that he did not place plaintiff in one of the Battalion Chief positions in part because of concerns over plaintiff's abilities as a manager. (Devlin Dep. at 236–37.)

Plaintiff also argues that the Burkell report, which reflected the results of the first organizational study, did not recommend that the training process be reorganized or that plaintiff be removed from his position. (Pl.'s Resp. at 16–17.) However, the report expressly noted that (1) training appeared to be "adequate, if not good, but very sporadic," (2) low staffing levels had an impact on compliance with the training schedule, and some district members had suggested "if the training chief is too busy with other responsibilities, then this function should be reassigned or supported," and (3) there was a "general feeling that the overall quality of training has receded in recent years." (Ex. F to Def.s' Mot. at 15–16.) Although there were no specific recommendations as to how to address these training concerns, Devlin's decisions to create the role of Training Captain and to offer plaintiff the position are not inconsistent with his assertion that these decisions were made in an attempt to improve training.

Next, plaintiff argues that Devlin did not consult the Training Chief before creating the Training Captain position and decided to move plaintiff into the new position "without the vaguest notion or suggestion of what duties, responsibilities, or capacity [plaintiff] would be expected to assume." (Pl.'s Resp. at 17.) The duties of the Training Captain were described by Deputy Chief Pischke as follows: "He would be doing – he would have done all the field training. Most of it, the majority of the field training. He would have been involved in the new hire fire academy, both at the volunteer level and at the career level. He would have been involved with training not only the new career people but the volunteers. I think that pretty much sums it up." (Pischke Dep. at 122.) Plaintiff appears to argue this description is insufficient, but he fails to explain, and the Court fails to see, how that is the case. (Pl.'s Resp. at 17–18.) Moreover,

although Devlin is no longer employed by Mountain View, the Training Captain position is still part of its organizational structure, (*see* Pischke Aff. ¶ 4, Ex. HH to Def.s' Reply), which indicates it was not created solely with plaintiff in mind.

Finally, plaintiff argues no legitimate rationale has been put forward as to why Rademacher, who was younger and less experienced, was made Battalion Chief rather than plaintiff. However, Devlin testified that, after the reorganization, Rademacher filled the vacant Battalion Chief position only temporarily. (Devlin Dep. at 144–45.) When he was appointed, plaintiff had already been moved to the Training Captain position and was taking FMLA leave. (*Id.* at 146.) Devlin also testified that "[t]he placement of a temporary person did not come into play, in my view, in regards to how I was going to reorganize the organization." (*Id.*) Thus, the evidence shows, and plaintiff has put forth no alternative evidence, that Rademacher was simply temporarily occupying a vacant position and that his selection was unrelated to the reorganization itself or to plaintiff's demotion. The position was subsequently filled permanently by David Beebe, (*id.* at 142–44), whose qualifications plaintiff does not appear to challenge.

In sum, plaintiff offers only his own conjecture that Mountain View's proffered reasons for the reorganization and plaintiff's demotion are unworthy of credence and thus has failed to raise a genuine issue of material fact as to whether those reasons were a pretext for discrimination. Accordingly, Mountain View is entitled to summary judgment on plaintiff's age discrimination claims.

**B.    Retaliation Claim**

Under the ADEA, an employer may not discriminate against an individual for "oppos[ing] any practice made unlawful by" the statute or for making a charge or participating in an investigation or proceeding under the statute.  29 U.S.C. § 623(d).  Plaintiff alleges Mountain View violated the ADEA by reducing his accrued leave time in retaliation for his filing an internal grievance and a complaint with the EEOC.

The framework utilized to evaluate retaliation claims on summary judgment is similar to that of discrimination claims.  First, the plaintiff must make out a prima facie case by demonstrating that (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection existed between the protected action and the materially adverse action.  *Argo v. Blue Cross & Blue Shield of Kan.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414–15 (2006)).  If the plaintiff satisfies those requirements, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  If the defendant meets that burden, it shifts back to the plaintiff to prove the proffered explanation is a pretext for discrimination.  *Id.* at 1203.

### 1.    *Prima Facie Case*

Mountain View concedes that plaintiff has satisfied the first two requirements of a prima facie retaliation claim.  On July 8, 2005, plaintiff filed a Charge of Discrimination with the EEOC, (Pl.'s Dep. at 192–93), and on July 25, 2005, plaintiff filed an internal grievance with Mountain View complaining in part of age discrimination.  (Ex. S to Def.s' Mot.)  Both of these actions

constitute protected opposition to discrimination. *See Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002) (filing a complaint with the EEOC is protected opposition under Title VII) (citation omitted); *Argo*, 452 F.3d at 1202 (filing internal grievance alleging sexual harassment is protected opposition under Title VII). In addition, when plaintiff moved to his new position, plaintiff's previously accrued hours of vacation and sick leave were reduced. (Ex. W to Def.s' Mot.) The Court finds, and again defendants do not dispute, that a reasonable employee would find this action materially adverse.

Mountain View challenges only plaintiff's ability to establish the third element by demonstrating a causal link between the protected opposition and the adverse employment action. The Tenth Circuit has indicated that close temporal proximity between the protected opposition and the adverse employment action is sufficient to infer causation. *See Anderson v. Coors Brewing Co.*,181 F.3d 1171, 1179 (10th Cir. 1999) (citing case law holding that a period of six weeks by itself gives rise to a rebuttable inference of a causal connection, but that a period of three months does not). In this case, the challenged action occurred just over two weeks after plaintiff filed the EEOC complaint and the same day plaintiff filed his internal grievance, which clearly qualifies as "close temporal proximity" under *Anderson*.

However, Mountain View has presented evidence that the reduction in plaintiff's accrued vacation and sick leave was first reflected on plaintiff's paycheck dated July 25, 2007. (Mullison Aff. ¶ 4(c) & Att.; Devlin Aff. ¶ 3.) In addition, Devlin testified he did not receive notice of plaintiff's EEOC complaint until July 26, 2007. (Devlin Aff ¶ 2.) Mountain View contends that, because the undisputed evidence shows it had no notice of the EEOC filing until after the

16

challenged action occurred, there can be no causal connection between them.  However, Mountain View's argument does not take into account plaintiff's internal grievance, which was dated the same day the challenged action apparently took place.  Though a close call, the Court holds that, viewing the evidence in the light most favorable to plaintiff, plaintiff has created a fact issue on the causation element of his prima facie retaliation claim.

### 2. *Legitimate Business Purpose*

Because plaintiff has established a prima facie case, the burden shifts to Mountain View to articulate a legitimate, nondiscriminatory purpose for the adverse action.  *Argo*, 452 F.3d at 1202.  Mountain View asserts that plaintiff's accrued hours were reduced in accordance with a policy already in use at the district.  (Devlin Aff. ¶ 5.)  A similar policy had been utilized at Devlin's former fire district, North Metro, and Devlin testified he implemented the policy at Mountain View when he began serving as Fire Chief in 1997.  (*Id.*; Ex. X to Def.s' Mot.)  Mountain View contends that, pursuant to the policy, upon an employee's transition to a position with different hourly requirements, the employee's accrued vacation and sick time were modified upward or downward pursuant to a formula depending on whether the new position required more or fewer hours than the employee's former position.  (Pischke Dep. at 141–43.)  Mountain View has, with the above explanation, set forth a legitimate, nondiscriminatory purpose for the reduction in plaintiff's accrued hours, thereby shifting the burden to plaintiff to show that "the proffered explanation is a pretext for retaliation."  *Argo*, 452 F.3d at 1203.

### 3. *Pretext*

As discussed above, to show pretext an employee must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan*, 108 F.3d at 1323 (quotation marks omitted). Plaintiff asserts as evidence of pretext that the alleged policy was not in the employee handbook and that two other employees told him they had switched from 56-hour to 40-hour work weeks without a corresponding decrease in their accrued hours. (Pl.'s Dep. at 195; Devlin Dep. at 225.)

The Court will not consider the statements allegedly made by plaintiff's colleagues, which are inadmissible hearsay and cannot be used to create a fact issue to avoid summary judgment. *Argo*, 452 F.3d at 1199. Moreover, although the accrual policy was not in the employee handbook, Mountain View presented undisputed evidence that the policy has been consistently applied since Devlin became fire chief in 1997. Specifically, the policy was applied once in 2002 when leave time was added for an employee who moved from a 40-hour week position to a 56-hour week position, and once in 2003 when an employee's leave time was reduced after moving from a 56-hour week position to a 40-hour week position. (Mullison Aff. ¶ 4 & Att.) Donna Mullison, Mountain View's office administrator, testified that no other employee made a permanent switch to a position with different hourly requirements while Devlin was the fire chief. (*Id.* ¶ 5.) Plaintiff, on the other hand, offers no admissible evidence that this policy had not been applied previously and consistently under Devlin's watch and is therefore unable to demonstrate

an issue of material fact as to whether the accrual policy was a pretext for discrimination.

Accordingly, Mountain View is entitled to summary judgment on plaintiff's retaliation claim.

### C. Breach of Contract and Promissory Estoppel

Plaintiff argues Mountain View breached its employment contract with him by demoting

him without following the disciplinary procedures set forth in the employee handbook. Although

plaintiff stipulates that at will employment is presumed under Colorado law and that he signed an

acknowledgment of at will employment, he argues that defendants' unwavering use of the

handbook's procedures created an implied contract of employment. Alternatively, plaintiff argues

he was entitled to the disciplinary proceedings in the handbook under a theory of promissory

estoppel.

In Colorado, an employee hired for an indefinite time period is presumed to be an at will

employee "whose employment may be terminated by either party without cause or notice, and

whose termination of employment does not give rise to a cause of action." *Orback v. Hewlett-

Packard Co.*, 97 F.3d 429, 432 (10th Cir. 1996) (citing *Cont'l Air Lines v. Keenan*, 731 P.2d

708, 711 (Colo. 1987)). In certain circumstances, however, an employee handbook containing

statements "limiting an employer's right to discharge employees" may give rise to a cause of

action under a theory of implied contract or promissory estoppel. *Ferrera v. Nielsen*, 799 P.2d

458, 460 (Colo. App. 1990). Under an implied contract theory, the statements "must be a

manifestation of the employer's willingness to enter into a bargain that would justify the employee

in understanding that his or her assent was invited." *Id.* at 460–61.

Notwithstanding the existence of such statements in an employee handbook, summary judgment may nevertheless be appropriate "if the employer has clearly and conspicuously disclaimed intent to enter into a contract limiting the right to discharge employees." *George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. App. 1997). In *George*, for example, supervisory employees including the plaintiff were given handbooks that outlined certain procedures regarding discipline and termination. *Id.* at 1196. The handbook contained a disclaimer that the handbook was not designed to alter the at will employment status of any employees. *Id.* The plaintiff was terminated and argued that the disciplinary procedures in the handbook constituted "an agreement or promise of continuing employment." *Id.* The Colorado Court of Appeals disagreed, noting that a disclaimer placed in close proximity to the discipline procedures was sufficient to indicate to the employee, as a matter of law, that the employer did not intend to be bound by the contract. *Id.* at 1199.

The instant case is similar to *George*, as Mountain View has explicitly and unambiguously expressed that the employee handbook does not alter the at will status of its employees. Specifically, Mountain View prominently placed a disclaimer in bold and capitalized print at the beginning of the handbook that provided:

<u>**NOTICE**</u>

**EACH NON-CONTRACT EMPLOYEE OF THIS DISTRICT IS AN "AT-WILL" EMPLOYEE.**

**THE RULES, REGULATIONS, POLICIES AND PROCEDURES SET FORTH IN THIS HANDBOOK APPLY TO ALL EMPLOYEES AND, EXCEPT WHERE EXPRESSLY EXCLUDED, TO ALL VOLUNTEERS AND RESERVES OF THE DISTRICT. THIS HANDBOOK DOES NOT**

**CONSTITUTE AN EXPRESS OR IMPLIED CONTRACT FOR EMPLOYMENT. NOTWITHSTANDING ANY STATEMENT TO THE CONTRARY IN THIS HANDBOOK, ANY REPRESENTATIONS IN ANY EMPLOYMENT APPLICATIONS, DISTRICT FORMS, OTHER DISTRICT DOCUMENTS, POLICIES, OR ANY STATEMENTS MADE BY ANY AGENT OR MEMBER OF THE DISTRICT, ANY MEMBER MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT CAUSE, AND IN THE SOLE DISCRETION OF THE DISTRICT, ACTING THROUGH THE DISTRICT FIRE CHIEF, SUBJECT ONLY TO THE APPLICABLE REQUIREMENTS OF STATE OR FEDERAL LAW.**

(Ex. D to Def.s' Mot.)  The handbook also contains two disclaimers at the introduction of the disciplinary section.  The first one states:  "Disciplinary actions of the District are not progressive.  Nor does the District have a step-discipline policy.  It is not necessary that prior notice or a written or oral reprimand be given prior to any disciplinary action or dismissal."  (*Id.* § 5(A).)  On the same page, the handbook also states:  "Nothing in this Section is intended to create a progressive or step-discipline expectation or policy, or alter the at-will status of the District's members (i.e. each member may be terminated with or without cause at any time without prior notice).  However, the district may take appropriate disciplinary action, up to and including termination, in the event of any of the following: . . ."  (*Id.* § 5(B).)  Moreover, on August 8, 2004 plaintiff signed an "employee acknowledgment" of receipt of the handbook that stated in relevant part:

> I understand that this Handbook does not constitute a contract of employment or a part thereof, either express or implied.  Notwithstanding any statement to the contrary in the Handbook, any representations contained in any employment application . . ., District forms, other District documents, policies or any statements made by any agent of the District, I understand that paid employees of the District are employed on an "at will basis," and that volunteers and reserves provide services to the District on a strictly volunteer basis.  As a result, I understand that paid employees, volunteers and reserves may terminate their

employment with, or volunteer services to, the District without notice at any time. Similarly, the District may terminate a paid employee's employment, or the volunteer services provided by a volunteer or reserve, at any time with or without cause, and with or without notice, subject only to any applicable requirements of State or Federal law.

(Ex. E to Def.s' Mot.)

The clear and conspicuous up-front disclaimer, particularly considered in conjunction with the additional disclaimers located in the section governing disciplinary procedures and the signed acknowledgment, demonstrates that Mountain View did not intend the disciplinary procedures to be mandatory. *See Ferrera*, 799 P.2d at 461; *George*, 950 P.2d at 1198. Plaintiff testified, however, that the procedures contained in the handbook "have always, without exception been applied to provide members with notice of an employment action against them, an opportunity to respond, and a chance for administrative review to insure that members are treated fairly and not subject to arbitrarily [sic] acts or discipline without cause." (Pl.'s Aff. ¶ 3, Ex. 17 to Pl.'s Resp.) Plaintiff argues Mountain View's custom of strictly enforcing the handbook's disciplinary procedures modified his at will status and created an implied contract despite the disclaimers. *See George*, 950 P.2d at 1198 (citing *Evenson v. Colo. Farm Bureau Mut. Ins. Co.*, 879 P.2d 402 (Colo. App. 1994) (noting that even when a clear disclaimer exists, words or conduct may be sufficient to modify at will employment if "there is other legally sufficient evidence in the record to create a question of fact concerning the modification of at will employment")). To support this contention, plaintiff cites *Burrill v. GTE Government Systems Corp.*, 804 F. Supp. 1356 (D. Colo. 1992), *Fair v. Red Lion Inn*, 920 P.2d 820 (Colo. App. 1995), and *Allabashi v. Lincoln National Sales Corp.*, 824 P.2d 1 (Colo. App. 1991).

22

Each of the cases relied on by plaintiff is easily distinguishable from the instant case. In *Burrill*, an employee signed an employment application that acknowledged his status as an at will employee, but later received an employee handbook that did not contain such a disclaimer and gave managers the right to discharge employees for "just cause." 804 F. Supp. at 1359–60. In the instant case, the acknowledgment and the handbook were provided at the same time and were consistent with respect to at will employment. In *Fair*, the court expressly found that the employee handbook was *not* binding, and the issue was then whether an oral promise made by a supervisor to an employee regarding her permissible medical leave constituted an enforceable obligation. 920 P.2d at 826. In contrast, plaintiff does not suggest in this case that any specific promises were made to him to apply the discipline procedures in the handbook. Finally, in *Allabashi* an employer provided to its employees a handbook that contained an at will disclaimer as well as supplemental documents that outlined termination procedures and stated that just cause was necessary for involuntary termination. 824 P.2d at 3. These inconsistent documents created a genuine issue of material fact on the issue of whether a contract existed. *Id.* In the instant case, however, the handbook was not supplemented by written materials or oral promises. In sum, none of the cases plaintiff relies on supports his argument that his at will employment was modified.

Moreover, in *Evenson* the court found that the disclaimer provisions in question were not sufficiently conspicuous, holding: "In the absence of conspicuous disclaimer provisions but with evidence that the employer thus treated the provisions as binding, whether the provisions in the manual constituted a contract between the parties is a question of fact for the jury." *Evenson*, 879

23

P.2d at 409.  In this case, the disclaimer provisions were unquestionably clear and conspicuous.  Indeed, it is difficult to conceive of a way the disclaimer could have been any more obvious, indicating that under *Evenson* summary judgment is warranted.

Similarly, plaintiff has failed to create a fact issue on his promissory estoppel claim.  To demonstrate that an employee is entitled to enforce termination procedures under promissory estoppel, he must demonstrate that "(1) the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures, (2) the employee reasonably relied on the termination procedures to his detriment, and (3) injustice can be avoided only by enforcement of the termination procedures." *Cont'l Air Lines*, 731 P.2d at 712.  Given the disclaimers discussed above, the Court holds plaintiff has failed to create a fact issue on the first element of his promissory estoppel claim.

Moreover, plaintiff himself failed to comply with the handbook's procedures.  On July 25, 2005, plaintiff filed an internal grievance complaining of his demotion "pursuant to Section 6" of the handbook.  Under Section 6, a grievance was required to be filed "no later than fifteen (15) calendar days after the District's action which is the subject of the dispute."  (Ex. D to Def.s' Mot., § 6(B).)  Plaintiff was notified his position was being eliminated and was offered the Training Captain position on June 20, 2005, over a month before he filed the grievance.  (Ex. J to Def.s' Mot.)  Plaintiff's own failure to comply with the disciplinary procedures undercuts his assertion that he detrimentally relied on the availability of those procedures.  Thus, Mountain View is entitled to summary judgment on plaintiff's breach of contract and promissory estoppel claims.

**D.      Tortious Interference with Contractual Relations**

Plaintiff asserts Devlin intentionally interfered with plaintiff's contract for employment with Mountain View.  Colorado has adopted the Restatement (Second) of Torts with respect to tortious interference claims, *Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants*, 690 P.2d 207, 210 (Colo. 1984), which provides:

> One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (1977).  The tort is applicable to contracts that are terminable at will.  *Id.* § 766 cmt. g.

Tortious interference claims thus require proof that the defendant both intentionally and improperly interfered with the performance of a contract.  *Mem'l Gardens, Inc.*, 690 P.2d at 210. Moreover, "[a]n agent who, while acting within the scope of official duties, causes his or her principal to breach a contract generally will not be held liable for tortious interference with that contract." *Rudd v. Burlington Coat Factory Warehouse of Colo.*, 388 F. Supp. 2d 1201, 1206 (D. Colo. 2005) (citing *W.O. Brisben Cos. v. Krystkowiak*, 66 P.3d 133, 136 (Colo. App. 2002), *aff'd*, 90 P.3d 859 (Colo. 2004)).  Such an agent may be liable "only if he acts not at all in service to the [principal's] interests but instead is motivated solely out of animus toward one or both contracting parties." *Id.* (citation omitted).

In the instant case, Devlin was an agent of Mountain View and was acting within the scope of his official duties when he implemented the reorganization and demoted plaintiff.  Even if

there is evidence that Devlin harbored some animus toward plaintiff, there is no indication that either the reorganization or plaintiff's demotion was motivated *solely* out of such animus. Given the Court's holding above that plaintiff has failed to raise an issue of fact that the reasons for demoting him were pretextual, plaintiff cannot controvert Devlin's testimony that he was motivated, at least in part, by a desire to address the concerns raised in the organizational studies and make improvements in the suggested areas. Accordingly, Devlin is entitled to summary judgment on plaintiff's tortious interference claim.

### E. Violation of Due Process Rights

Plaintiff argues he was entitled to due process before Mountain View could deprive him of his employment. However, "at will employees lack a property interest in continued employment." *Darr v. Town of Telluride, Colorado*, 495 F.3d 1243, 1252 (10th Cir. 2007) (citation omitted). Thus, plaintiff, as an at will employee of Mountain View, did not have a constitutionally protected property interest in his employment for due process purposes. Because plaintiff was not deprived of such a property right, his due process claim is foreclosed as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. # 46] is GRANTED, and plaintiff's claims are DISMISSED with prejudice. Defendants may have their costs upon the filing of a bill of costs within eleven days of the date of this order.

DATED:  February 14, 2008

BY THE COURT:


<u>s/ Edward W. Nottingham</u>
Edward W. Nottingham
Chief United States District Judge